**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| GEL, LLC | Case No. 12- 41911 (CEC) |
| Debtor. | |
| In re: | Chapter 11 |
| GRL, LLC | Case No. 12- 41913 (CEC) |
| Debtor. | |

## DECISION

APPEARANCES:

Karamvir Dahiya, Esq.
Dahiya Law Offices, LLC
350 Broadway Suite 412
New York, NY 10013
Counsel for the Debtors

Jerold C Feuerstein, Esq.
Kriss & Feuerstein LLP
360 Lexington Avenue, Suite 1200
New York, NY 10017
Counsel for Archer Capital Fund, L.P.

William E. Curtin, Esq.
U.S. Department of Justice
271 Cadman Plaza East
Suite 4529
Brooklyn, NY 11201
Counsel for Tracy Hope Davis, United States Trustee for Region 2

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the application (the "Application") of Archer Capital Fund, L.P., ("Archer") for the entry of a Court order dismissing the chapter 11 cases of GEL, LLC ("GEL") and GRL, LLC ("GRL" and together with GEL, the "Debtors") with prejudice pursuant to §§ 362(d)(4), 707(A) and 1112(b) of title 11 of the United States Code (the "Bankruptcy Code").[1] A Court hearing on the Application was held on May 2, 2012. On the undisputed record of these cases, multiple grounds to dismiss exist, including the failure of the Debtors comply with their reporting obligations, the failure of the Debtors to maintain insurance and numerous indicia of a bad faith filing. Accordingly, the Application is granted, and the petitions of the Debtors are dismissed with prejudice pursuant to §§ 362(d)(4) and 1112(b).[2]

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1996. This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and 157(b)(2)(G). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## FACTUAL BACKGROUND

The following facts are not in dispute, except as noted. The Debtors are owned and operated by members of the Lambrakis family, including George Lambrakis and/or his two brothers Gregory Lambrakis and Alexander Lambrakis.

---

[1] Unless otherwise indicated, statutory citations herein are to provisions of Title 11 of the United States Code.

[2] The Application also seeks in the alternative relief from the automatic stay pursuant to § 362(d)(1) of the Bankruptcy Code. In light of granting of Archer's request for dismissal under § 1112(b) and for relief under §362(d)(4), the Court will not reach Archer's request for relief under § 362(d)(1).

GEL is a New York limited liability company that owns real property in Queens, New York, located at 29-08 Hoyt Avenue South, Astoria, New York, and 29-10 Hoyt Avenue South, Astoria, New York (Block 838, Lots 3 and 4, respectively) (the "GEL Property").

GRL is a New York limited liability company that owns two parcels of real property in Queens, New York, located at 3276/3278 31st Street, Astoria, New York (Block 587, Lot 68) (the "GRL Property"). The GRL Property consists of a single story building currently used as a medical office by Emmanuel Lambrakis, who is the father of the principal of the Debtors.

An affiliate of the Debtors, Eagle Realty LLC ("Eagle"), is a New York limited liability company that owned real property in Queens, New York, located at 178-02/178-18 Hillside Avenue, Jamaica, New York, 178-20/178-36 Hillside Avenue, Jamaica, New York and 88-10/88-16 179th Street, Jamaica, New York (Block 9913, Lots 25, 35, and 41 respectively) (the "Eagle Property," and collectively with the GEL Property and the GRL Property, the "Properties").

Eagle filed a petition for relief under chapter 11 of the Bankruptcy Code on September 16, 2011.[3] That petition was dismissed with prejudice by this Court on December 23, 2011. The dismissal order bars Eagle from filing any future petitions under the Bankruptcy Code.[4]

Based on a review of the Debtors' schedules and the claims filed, the Debtors' only non-insider creditors are Archer, the New York City Department of Environmental Protection, Water Board ("DEP"), the New York City Department of Finance and Taxation ("Finance"), Gregory Georgias Associates, and the Internal Revenue Service ("IRS"). Claims held by DEP and

---

[3] In re Eagle Realty, LLC (Case No. 11-47909).

[4] See Docket No. 41, O*rder Dismissing Case and Barring Debtor(s) Barred Debtor Eagle Realty, LLC from filing any and all future bankruptcy case under any chapter of the Bankruptcy Code in this or any other Court.*

Finance would constitute senior liens on the Properties. In re 51-53 West 129th Street HDFC, Inc., -- B.R. ----, No. 12–10502, 2012 WL 2923178 at *4 (Bankr. S.D.N.Y. Jul. 19, 2012).

On March 8, 2007, Archer made a loan (the "GEL/GRL Loan") in the principal sum of $2,600,000.00 to the Debtors. The GEL/GRL Loan is evidenced by a promissory note executed on the same date in the principal sum of $2,600,000.00. To secure the obligations under the GEL/GRL Loan, the Debtors and Eagle executed and delivered to Archer (i) a Mortgage Consolidation and Extension Agreement, Assignment of Leases and Rents and Security Agreement dated March 8, 2007 (the "GEL/GRL Mortgage") encumbering the Properties and (ii) an Assignment of Leases and Rents to Additionally Secure $2,600,000.00 Consolidated Secured Promissory Note, dated March 8, 2007 (the "AL&R"). The GEL/GRL Mortgage and the AL&R were duly recorded. In addition, Eagle, George Lambrakis, Gregory Lambrakis and Emmanuel Lambrakis (collectively, the "Guarantors") executed and delivered a guarantee to Archer to secure the repayment of the obligations under the GEL/GRL Loan.

Pursuant to terms of the GEL/GRL Loan, the Debtors were obligated to make monthly payments to Archer commencing on May 1, 2007 and ending on April 1, 2008 when the GEL/GRL Loan was due and payable in full. The Debtors failed to make full payment on the GEL/GEL Loan on April 1, 2008. On November 10, 2008, Archer commenced an action to foreclose on the GEL/GRL Mortgage (the "Foreclosure Action") in the Supreme Court of the State of New York, Queens County, against the Debtors, the Guarantors, and other defendants with a purported interest in the Properties. The state court appointed a receiver to manage the Properties. A referee appointed under state law determined that a sum of $2,406,528.93 was due Archer as of March 22, 2011, plus per diem interest every day thereafter.

Emmanuel Lambrakis is the current tenant at the GRL Property, and is the subject of a landlord tenant proceeding for the non-payment of rent. Insurance on the GRL Property lapsed on December 26, 2011.

On August 5, 2011, a judgment (the "Foreclosure Judgment") was entered in the Foreclosure Action, and in connection therewith, a foreclosure sale was scheduled for September 16, 2011 (the "Original Sale Date").

On the Original Sale Date, the Debtors filed in this Court their first petitions for relief under chapter 11 of the Bankruptcy Code, thereby staying the foreclosure sale by operation of § 362.[5] Upon the motion of the United States Trustee, the Court entered orders on January 27, 2012 dismissing petitions of GRL[6] and GEL.[7]

About one month after the dismissal of their initial chapter 11 petitions, the Debtors each filed another chapter 11 petition, this time in the United States Bankruptcy Court for the Southern District of New York.[8] After a hearing, Judge Alan L. Gropper determined that venue was improper in the Southern District of New York and ordered that the cases be transferred to this district.[9]

Neither Debtor has employees or has generated income in the past three years. Archer is the Debtors' sole secured creditor and is by far the largest creditor. As of January 18, 2012, interest on the GEL/GRL Loan has accumulated in the amount of $339,902.64, for an aggregate claim of $2,746,431.57 held by Archer. Archer's claim is listed as disputed by the Debtors.

---

[5] In re GRL LLC (Case No. 11-47911) and In re GEL LLC, (Case No. 11-47910).

[6] Docket No. 26.

[7] Docket No. 26.

[8] In re GRL LLC (Case No. 12-108011) and In re GEL LLC, (Case No. 12-10800).

[9] In re GRL LLC, Docket No. 20 and In re GEL LLC, Docket No. 19.

GRL has scheduled only two unsecured claims in the amount of $115,000.00 and $27,500.00, belonging to insider Emmanuel Lambrakis and Gregory Georgias Associates, respectively. GRL also scheduled a claim by DEP in an unknown amount. GEL's schedules list unsecured debt owed to two insiders in the total amount of $990,000, as well as debt owed to Finance in an unknown amount. IRS has filed an unsecured claim against GEL in the amount of $14,365 and an unsecured claim against GRL in the amount of $5,758.

## DISCUSSION

**I.      Dismissal Under § 1112(b) Is Required**

Under §1112(b), a court is required to convert or dismiss a Chapter 11 case if any of the following circumstances is present:

> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>
> (B) gross mismanagement of the estate;
>
> (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;
>
> (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
>
> (E) failure to comply with an order of the court;
>
> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
>
> (G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;
>
> (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);
>
> (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;

    (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;

    (K) failure to pay any fees or charges required under chapter 123 of title 28;

    (L) revocation of an order of confirmation under section 1144;

    (M) inability to effectuate substantial consummation of a confirmed plan;

    (N) material default by the debtor with respect to a confirmed plan;

    (O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and

    (P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

11 U.S.C. § 1112(b)(4).

In evaluating a motion made under § 1112(b), the movant has the burden of demonstrating cause by a preponderance of the evidence. Taub v. Taub (In re Taub), 427 B.R. 208, 231 (Bankr. E.D.N.Y. 2010) (internal citation omitted). A bankruptcy court has "wide discretion" to determine whether cause exists, and if cause is present, to decide whether to convert the case to one under Chapter 7 or to dismiss. In re BH S & B Holdings, LLC, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010).

*Cause Exists to Convert or Dismiss Under §§ 1112(b)(4)(C), 1112(b)(4)(F), and 1112(b)(4)(H)*

Section 1112(b)(4)(C) provides that the "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is cause to convert or dismiss a Chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). The record in these cases is not challenged that the Debtors allowed the insurance on the GRL Property to lapse in December 2011. As a result, cause to exist to dismiss or convert the Debtors' chapter 11 cases under § 1112(b)(4)(C). See e.g., In re Daniels, 362 B.R. 428, (Bankr. S.D. Iowa 2007) (discussing failure to maintain insurance).

Section 1112(b)(4)(F) provides that the "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter" is cause to convert or dismiss a Chapter 11 case. 11 U.S.C. § 1112(b)(4)(F).

Section 1112(b)(4)(H) provides that the "failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any)" is cause to convert or dismiss a Chapter 11 case. 11 U.S.C. § 1112(b)(4)(H).

The U.S. trustee requires the submission of monthly financial reports by a chapter 11 debtor. See United States Trustee Manual, § 3-3.3. These are required to be filed on a monthly basis after the filing of a chapter 11 case. The reports encompass cash receipts and disbursement statements (3-3.3.1); statements of operations (3-3.3.2); balance sheet (3-3.3.3); schedules of post-petition liabilities (3-3.3.4); a tax reconciliation statement (3-3.3.5). It is not disputed that none of the Debtors have filed any of the required reports. The U.S. trustee may waive or modify the requirements, but the Debtors have not obtained a waiver of these requirements. Nor have the Debtors requested the Court's authorization not to file the required reports.

Therefore, cause exists to dismiss or convert the Debtors' chapter 11 cases for failure to file monthly operating reports. Daniels, 362 B.R. at 435 (discussing failure to file monthly reports).

*Cause Arises from the Debtors' Bad Faith*

The grounds set forth in § 1112(b) for dismissal or conversion are "illustrative, not exhaustive." C–TC 9th Ave. P'hip v. Norton Co. (In re C–TC 9th Ave. P'ship), 113 F.3d 1304, 1311 (2d Cir. 1997). "[I]t is well established that 'bad faith may serve as a ground for dismissal of a bankruptcy petition.'" In re Island Helicopters, Inc., 211 B.R. 453, 461 (Bankr. E.D.N.Y. 1997) (quoting Michigan Nat'l Bank v. Charfoos (In re Charfoos), 979 F.2d 390, 392 (6th Cir.

1992)).  <u>See</u> <u>also</u> <u>Carolin Corp. v. Miller</u>, 886 F.2d 693, 698-99 (4th Cir. 1989) (quoting legislative history).

Thus, conversion or dismissal of a Chapter 11 case may be warranted when a petition was not filed in good faith.  According to the Second Circuit, "[w]hen it is clear that, from the date of filing, the debtor has no reasonable probability of emerging from the bankruptcy proceedings and no realistic chance of reorganizing, then the chapter 11 petition may be frivolous."  <u>C–TC 9th Ave. P'ship,</u> 113 F.3d at 1310.  The Second Circuit further cautioned against permitting a chapter 11 debtor to use the bankruptcy process to "attack a judgment collaterally."  <u>Id.</u>  It is not proper for a chapter 11 debtor "to file[ ] its petition [ ] to avoid the consequences of adverse state court decisions while it continues litigating."  <u>Id.</u>  The central purpose of a chapter 11 proceeding is "to reorganize, [not to] relitigate."  <u>Id.</u> (internal citation omitted).

It is obvious that the each of the Debtors filed its petition in bad faith.  The initial petitions were filed on the very day the foreclosure sales were scheduled to take place, effectively preventing these sales.  After the dismissal of their petitions, the Debtors re-filed within one month in another district to prevent Archer from scheduling a new foreclosure sale.

Moreover, neither of the Debtors has any employees or cash flow.  As the <u>Island Helicopters, Inc.</u> court noted, "[f]undamental to any bona fide corporate reorganization effort under Chapter 11 of the Bankruptcy Code is that the entity seeking relief have assets, liabilities, creditors, employees and business operations." 211 B.R. at 465.

These two bankruptcy cases are essentially two-party disputes between the Debtors, on the one hand, and Archer, on the other.  <u>Id.</u> at 456 (noting that a bankruptcy court will not countenance "a desperate legal stratagem in a two party dispute designed to delay and obstruct" a creditor via a chapter 11 bankruptcy filing).  Archer contends that it is entitled to execute the

Foreclosure Judgment which was duly entered by a state court of competent jurisdiction. The Debtors contend that Archer is not entitled to enforce the Foreclosure Judgment because the GEL/GRL Loan is usurious and therefore void under New York state law.

The Debtors raised this claim of usury for the first time in connection with their response to the Application. The Rooker–Feldman doctrine generally precludes a federal court from performing a de facto appellate review of a state court judgment. In re Ward, 423 B.R. 22, 27-28 (Bankr. E.D.N.Y. 2010). This Court lacks jurisdiction to review "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 27 (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). "Courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the Rooker- Feldman doctrine." Feinstein v. Chase Manhattan Bank, No. 06 CV 1512, 2006 WL 898076, at *2 (E.D.N.Y. Apr. 4, 2006) (collecting cases). It thus appears that the Debtors are procedurally barred from collaterally attacking the Foreclosure Judgment.

Even assuming that Rooker-Feldman would not apply here, the Court concludes that a state court is "better suited to determine" the application of New York's usury laws to the disputes between the Debtors and Archer. In re Dabrowski, 257 B.R. 394, 417-419 (Bankr. S.D.N.Y. 2001) (abstaining from hearing issues involving New York landlord-tenant laws). New York's anti-usury laws embody a legislative intent to "protect desperately poor people from the consequences of their own desperation." Schneider v. Phelps, 41 N.Y.2d 238, 243 (N.Y. 1977). Given the obvious state interests, "state courts provide the more appropriate forum," Dabrowski, 257 B.R. at 397, to examine the merits of the Debtors' alleged usury defense as well as the "the availability of state law procedural vehicles" to invoke the defense, id. at 418. This is

especially so where, as here, the usury defense is invoked in an effort to collaterally attack a foreclosure judgment entered by the state court.

Moreover, if the Debtors' argument that the Gel/GRL Loan is void due to usury is upheld, there is no need for a reorganization case under the Bankruptcy Code. The GRL Property and the GEL Property is each valued by the Debtors at $800,000. The only scheduled debt to non-insiders are $27,500 allegedly owed by GRL to Gregory Georgias Associates, the debt owed to DEP and Finance in an unknown amount, as well as the claims filed by IRS in the total combined amount of $20,123. Neither DEP nor Finance has filed a proof of claim in these chapter 11 cases. If the Properties were owned by the Debtors free and clear of the GEL/GEL Loan, the Debtors could obtain the financing to pay off the minimal debt they owe to non-insiders.

If the GEL/GRL Loan is enforceable against the Debtors, then Archer holds a secured claim against the Debtors, junior only to the claims of DEP and Finance. Section 1129(a)(8) requires that for a plan of reorganization be confirmed, each class of creditors must vote in favor of it. Section 1126(c) provides that a class of claims has accepted a plan if creditors holding at least two-thirds in amount and a majority in number of the voting claims of that class have voted in favor of the plan. A proponent of a plan may confirm a plan of reorganization only if, pursuant to §1129(a)(10), at least one impaired class of non-insider creditors votes in favor of it. See In re Tribune Co., 464 B.R. 126, 180-84 (Bankr. D.Del. 2011) (explaining the purpose of § 1129(a)(10)).

By operation of § 506(a), Archer holds a secured claim to the extent of the value of its collateral. Archer also holds an unsecured deficiency claim for the difference between the amount of its secured claim and the value of its collateral. Accepting as correct the valuation

provided by the Debtors, Archer has an unsecured claim of more than $1,000,000, and would therefore be able to prevent acceptance of a plan by any class of unsecured creditors. It is thus clear that if the GEL/GRL Loan is enforceable, the Debtors cannot confirm a plan over the objection of Archer. In re 698 Flushing Realty Corp., 335 B.R. 17, 20-21 (Bankr. E.D.N.Y. 2005) (describing the impossibility of confirming a plan over the objection of the judgment creditors who held the majority of unsecured debt owed by the Debtor).[10] On the other hand, if the GEL/GRL Loan is not enforceable, then the Debtors would have no need to invoke the protection of the Bankruptcy Code. Id.

The Court concludes, as it did in 698 Flushing Realty Corp., that the filing of these chapter 11 cases "is the very essence of a bad faith filing—commenced in an effort to gain the upper hand in state court litigation, with a demonstrable absence of any possibility of confirming a chapter 11 plan." Id. at 21. Any other motive ascribed to the filing of the instant cases is nothing more than "transparent fiction." Id.

*There is No Exception to Dismissal*

Section 1112(b)(2) provides in relevant part:

> The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—
>
> > (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

---

[10] The priority tax and DEP claims may not constitute impaired consenting classes for purposes of § 1129(a)(10) because the permissible treatment of their claims is narrowly prescribed by §§ 1129(a)(9)(C) and 1129(a)(9)(D). See Travelers Insurance Company v. Bryson Properties, XVIII (In re Bryson Properties, XVIII), 961 F.2d 496, 501 n.8 (4th Cir. 1992). Any unsecured tax or DEP claims would be classified with other unsecured claims, which class is dominated by Archer.

>     (B) the grounds for converting or dismissing the case include an act or
>     omission of the debtor other than under paragraph (4)(A)—
>         (i)     for which there exists a reasonable justification for the act
>                 or omission; and
>
>         (ii)    that will be cured within a reasonable period of time fixed
>                 by the court.

11 U.S.C. § 1112(b)(2).

Here, the Debtors have failed to meet this standard. No showing has been made that there is a reasonable justification for the Debtors' failure to file operating monthly reports or to insure the Properties, or that these omissions will be cured within a reasonable period of time. Nor has either Debtor shown that there is a reasonable likelihood that a plan will be confirmed within a reasonable time frame. Indeed, the record shows that due to the economic realities of these chapter 11 cases, no plan of reorganization can be confirmed for either Debtor over the objection of Archer. Accordingly, these chapter 11 cases must be dismissed for cause.

## II.     Lifting of the Stay Pursuant to § 362(d)(4) Is Appropriate

Section 362(d)(4), as enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 and amended by the Bankruptcy Technical Corrections Act of 2010, Pub. L. No. 111-327, provides in relevant part:

> [W]ith respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either-
>     (A) transfer of all or part ownership of, or other interest in, such real
>     property without the consent of the secured creditor or court approval; or
>     (B) multiple bankruptcy filings affecting such real property.

11 U.S.C. § 362(d)(4).

This provision gives the Court authority to grant <u>in rem</u> relief from the stay as to Archer's interest in the Properties, such that any and all future filings by any person or entity with an interest in the Properties will not operate as an automatic stay for a period of two years after the

date of the entry of such an order, provided that the order is recorded in compliance with applicable state laws governing notices of interest or liens in real property. In re Montalvo, 416 B.R. 381, 386 (Bankr. E.D.N.Y. 2009). There is no suggestion in these bankruptcy cases that the Debtors have engaged in transfers of interests in the Properties under § 362(d)(4)(A). To obtain relief under § 362(d)(4)(B), Archer bears the burden of establishing that the petitions filed by Debtors are part of a scheme to hinder, delay or defraud Archer. Id. A bankruptcy court can "infer an intent to hinder, delay, and defraud creditors from the fact of serial filings alone" without holding an evidentiary hearing. In re Procel, 467 B.R. 297, 308 (S.D.N.Y. 2012) (quoting In re Blair, No. 09–76150, 2009 WL 5203738, at *4–5 (Bankr. E.D.N.Y. Dec. 21, 2009)).

The extent of the efforts by a debtor to prosecute his bankruptcy case and the "[t]he timing and sequencing of the filings" are important factors in inferring the existence of "a scheme to delay, hinder, or defraud." Montalvo, 416 B.R. at 386-87. In Montalvo, there were six serial chapter 13 petitions timed to stop a foreclosure sale and the debtor "neither filed nor confirmed a chapter 13 plan . . . [or] made postpetition payments to" the secured creditor. Id. Likewise here, the Debtors have filed successive chapter 11 petitions in two judicial districts. The Debtors, with these filings, have prevented Archer from executing the Foreclosure Judgment. The record is clear that the Debtors have made no good-faith effort to prosecute their filed bankruptcy cases. No plan has been filed and as discussed supra, it appears that no plan can be confirmed as a matter of law. See In re Van Eck, 425 B.R. 54, (Bankr. D. Conn. 2010) (describing a debtor's good-faith effort to prosecute a case). The Debtors defaulted on the GEL/GRL Loan more than four years ago and they have made no payments to Archer on account of the GEL/GRL Loan since that time. See In re Lemma, 394 B.R. 315, 325 (Bank. E.D.N.Y.

2008) (weighing the debtor's attempts to render payments to the secured creditor as a factor militating against a finding of a scheme to delay, hinder, or defraud).

Therefore, this Court finds that relief under § 362(d)(4)(B) is appropriate and will accordingly enter an order that, if recorded in compliance with the applicable law governing notices of interest of liens in real property, will prevent any future bankruptcy filing affecting the Properties from operating as a stay of any action against the Properties for a period of two years after the date of the entry of such Order.

## CONCLUSION

Almost four years have passed since Archer commenced the Foreclosure Action. Almost a year has passed since the entry of the Foreclosure Judgment. In light of the Debtors' futile reorganization prospects and other reasons set forth herein, the Application is granted and these cases will be dismissed for cause pursuant to § 1112. The Court will further enter an order pursuant to § 362(d)(4)(B), providing that, if that order is recorded in compliance with applicable states laws governing notices of interest of liens in real property, any future bankruptcy filing affecting the GEL Property or the GRL Property will not operate as a stay of any action against GEL Property or the GRL Property for a period of two years after the date of the entry of such order. A separate order will issue.



Dated: Brooklyn, New York
July 30, 2012

_____
Carla E. Craig
United States Bankruptcy Judge